## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LEON STAMBLER, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:09-CV-310 DF |
| | § | |
| AMAZON.COM, INC., et al., | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## CLAIM CONSTRUCTION ORDER

Before the Court is Plaintiff's Opening Claim Construction Brief.  Dkt. No. 390.  Also

before the Court are Defendants' response and Plaintiff's reply.  Dkt. Nos. 395 & 396.  The

Court held a claim construction hearing on December 16, 2010.  *See* 12/16/2010 Minute Entry,

Dkt. No. 407.  Shortly before that hearing, the Court provided the parties' with preliminary

constructions for all of the disputed terms, and the parties addressed those preliminary

constructions during the hearing.  *See* 12/16/2010 Court's Preliminary Constructions, Dkt. No.

408.  The parties also agreed to submit several disputed terms for decision on the briefs, without

oral argument.  The terms orally argued are identified in a December 13, 2010 letter to the Court

from one of Defendants' counsel.  *See* Letter from T. Gray to the undersigned, Dkt. No. 408-1.

Having considered the briefing, oral arguments of counsel, and all relevant papers and

pleadings, the Court construes the disputed claim terms as set forth herein.

1

TABLE OF CONTENTS

**I. BACKGROUND** . . . . . . . . . **3**

**II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION** . . . . **7**

**III. DISCUSSION** . . . . . . . . . **8**

    A.  "transferring funds from the first account of the first party to the second account of
the second party if" . . . . . . . 8

    B.  "party" . . . . . . . . . 14

    C.  "coding" . . . . . . . . 16

    D.  "coding the EDC1 using a secret key of the originator" . . 18

    E.  "and then coding the result using third information" . . . 19

    F.  "variable authentication number (VAN)" . . . . 21

    G.  "using at least a portion of the received funds transfer information" . 25

    H.  "secret key of the payor/first party/originator" . . . 26

    I.  "including the VAN with the instrument for subsequent use in attesting to the
authenticity of the instrument" . . . . . . 27

    J.  "the originator's VAN being usable to determine the authenticity of the one or more
pieces of payment information" . . . . . . 28

    K.  "the VAN being used for attesting to the authenticity of the payor and document
information" . . . . . . . . 29

    L.  "the VAN attesting to the authenticity of the first party and the first information" 31

    M.  "authentic" . . . . . . . . 33

    N.  "credential" . . . . . . . . 34

    O.  "trusted entity/party" . . . . . . . 35

    P.  "previously issued" . . . . . . . 37

    Q.  "first/second storage means" . . . . . . 39

    R.  "information for identifying the first/second account of the first/second party" . 41

    S.  "one or more pieces of payment information including an amount, information for
identifying the recipient party or the originator party, a date, and a check control
or serial number" . . . . . . . . 43

    T.  "check control or serial number" . . . . . 45

    U.  "descriptive details of the first party" . . . . 45

    V.  "instrument for transferring funds" / "payment instrument" . . 47

    W.  "error detection code" . . . . . . . 49

    X.  "including the VAN with the instrument" . . . . 51

    Y.  "attaching the VAN to the instrument" . . . . 52

    Z.  "appending the VAN to the payment instrument" . . . 52

    AA. "accounts receivable" / "accounts payable" . . . . 54

    BB. Preamble of Claim 51 . . . . . . . 55

**IV. CONCLUSION** . . . . . . . . . **57**

# I.  BACKGROUND

Plaintiff asserts United States Patents No. 5,793,302 ("'302 Patent") and 5,974,148

("'148 Patent") (collectively, the "patents-in-suit"), both of which are entitled "Method for

Securing Information Relevant to a Transaction."  The '148 Patent is a divisional of the '302

Patent, and the two patents share a common written description.  The Abstract of the '302 Patent

states:

> A transaction system wherein, when a transaction, document or thing needs to be
> authenticated, information associated with one or more of the parties involved is
> coded together to produce a joint code.  This joint code is then utilized to code
> information relevant to the transaction, document or record, in order to produce a
> variable authentication number (VAN) at the initiation of the transaction.  This
> VAN is thereafter associated with the transaction and is recorded on the document
> or thing, along with the original information that was coded.  During subsequent
> stages of the transaction, only parties capable of reconstructing the joint code will
> be able to uncode the VAN properly in order to re-derive the information.  The
> joint code serves to authenticate the parties, and the comparison of the re-derived
> information against the information recorded on the document serves to
> authenticate the accuracy of that information.

The following claims of the '302 Patent are at issue for claim construction:

7. A method for coding first information, the method comprising:

> coding the first information using second information and then coding the
> result using third information, at least one of the second and third information
> being associated with at least one entity, the entity comprising a person or a
> computer program, wherein a credential having non-secret information stored
> therein is previously issued to at least one entity by a trusted entity, the non-secret
> information including the second or third information.

. . .

41. A method for authenticating the transfer of funds from a first account
associated with a first party to a second account associated with a second party,
the first account information being stored in a first storage means, and the second
account information being stored in a second storage means, the method
comprising:

receiving funds transfer information from the first party, including at least information for identifying the first account of the first party, and information for identifying the second account of the second party, and a transfer amount;

generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;

a third party for determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and

transferring funds from the first account of the first party to the second account of the second party if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

. . .

43. The method of claim 41 wherein the funds transfer comprises a payment made by the first party to the second party.

44. The method of claim 43 wherein prior to payment being made to the second party, the first party is presented with the second party's invoice, and after the payment is made to [the] second party, the accounts receivable associated with the second party, and the accounts payable associated with the first party are updated.

. . .

46. The method of claim 41 wherein the VAN is generated by using an error detection code derived by using at least a portion of the funds transfer information.

47. The method of claim 41 for further securing the transfer of funds, at least one party being previously issued a credential by a trusted party, the credential information including information associated with the at least one party, and a second variable authentication number (VAN1), the VAN1 being used to secure at least a portion of the credential information to the at least one party, authentication and the transfer of funds being denied to the at least one party if the at least a portion of the credential information cannot be secured to the at least one party by using the VAN1.

. . .

51. A method for authenticating the transfer of funds from an account associated with a first party to an account associated with a second party, a credential being

previously issued to at least one of the parties by a trusted party, the information stored in the credential being non-secret, the method comprising:

receiving funds transfer information, including at least information for identifying the account of the first party, and information for identifying the account of the second party, and a transfer amount;

generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;

determining whether the at least a portion of the received funds transfer information is authentic by using the VAN and the credential information; and

transferring funds from the account of the first party to the account of the second party if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

. . .

53. The method of claim 51 wherein the funds transfer comprises a payment made by the first party to the second party.

. . .

55. The method of claim 51 wherein the VAN is generated by using an error detection code derived by using at least a portion of the funds transfer information.

The following claims of the '148 Patent are at issue for claim construction:

1. A method of transferring funds from a first party to a second party, the method comprising:

creating a variable authentication number (VAN) on a computer using first information and a secret key of the first party, the first information including an amount and information for identifying the first party or the second party, the VAN attesting to the authenticity of the first party and the first information;

creating an instrument by the first party for transferring funds to the second party, the instrument including the first information and the variable authentication number (VAN) and attaching the VAN to the instrument.

. . .

5

4. The method of claim 1 wherein the secret key is obtained by the first party using a PIN, or using descriptive details, of the first party.

. . .

28. A payment method, comprising:

    a payer obtaining a document containing document information, the document information being associated with a debt incurred by the payer or for goods or for services to be paid for or purchased by the payor;

    the payer creating a variable authentication number (VAN) on a computer using at least a portion of the document information, and a secret key of the payor, the document information including an amount, and information for identifying the payee, the VAN being used for attesting to the authenticity of the payor and document information; and

    the payor creating a payment instrument using the document information and appending the VAN to the payment instrument, the payment instrument being used to pay for the incurred debt or for the purchase of goods or services.

. . .

34. A funds transfer method comprising:

    a first party creating an instrument for transferring funds to a second party, the adequacy of the funds in the first party's account being verified after the instrument is issued;

    using a computer to create a variable authentication number (VAN), the VAN being created using at least a secret key of the first party; and

    including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument.

35. A funds transfer method comprising:

    an originator party creating an instrument for transferring funds to a recipient party, the instrument information comprising (i) a variable authentication number (VAN), and (ii) one or more pieces of payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number;

6

creating an error detection code (EDC1) by coding one or more pieces of the payment information; and

creating the VAN on a computer by coding the EDC1 using a secret key of the originator, the originator's VAN being usable to determine the authenticity of the one or more pieces of payment information.

The patents-in-suit have been the subject of claim construction proceedings in at least three cases.  *See* 9/24/2010 Memorandum Opinion and Order, *Stambler v. Merrill Lynch & Co., et al.*, Civil Action No. 2:08-CV-462, Dkt. No. 420 (E.D. Tex.) ("*Merrill Lynch* Order"); 4/9/2010 Memorandum Opinion and Order, *Stambler v. JPMorgan Chase & Co., et al.*, Civil Action No. 2:08-CV-204, Dkt. No. 393 (E.D. Tex.) ("*JPMorgan* Order"); 1/29/2003 Memorandum Order, *Stambler v. RSA Sec. Inc., et al.*, Civil Action No. 01-065, Dkt. No. 373 (D. Del.).

## II.  LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

A determination of patent infringement involves two steps: first, the patent claims are construed, and, second, the claims are compared to the allegedly infringing device.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc).  Claim construction is a legal question for the courts.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).  The legal principles of claim construction were reexamined by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  The Federal Circuit in *Phillips* expressly reaffirmed the principles of claim construction as set forth in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), and *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004).

The Court construes the disputed terms in accordance with the doctrines of claim construction that it has outlined here along with those it has enunciated in the past.  *See Pioneer Corp. v. Samsung SDI Co.*, No. 2:07-CV-170, 2008 WL 4831319, at *1-*5 (E.D. Tex. Mar. 10, 2008).

## III.  DISCUSSION

### A.  "transferring funds from the first account of the first party to the second account of the second party if"

Plaintiff proposes this term means "to cause funds to pass from the first account to the second account, including by debiting or crediting or by instructing another to debit or credit." Dkt. No. 390 at 4.  Defendants propose this term means "debiting (i.e., deducting) the transfer amount from the first account and crediting (i.e., adding) the transfer amount to the second account if . . ."  Dkt. No. 395 at 1.

(1)  Parties' Positions

Plaintiff argues that "[t]he ordinary meaning of 'transfer' is 'to cause to pass from one place to another" and that "Defendants' construction . . . improperly constricts the broadly claimed 'transferring funds' to include *only* crediting and debiting."  Dkt. No. 390 at 4.  For example, Plaintiff submits that Claim 1 of the '148 Patent contemplates "transferring" as "creating an instrument," that is, creating instructions, not just crediting and debiting.  *Id.* Plaintiff further cites broad usage of "transferring" in the specification, as well as claim differentiation with respect to Claims 42 and 52 of the '302 Patent, which depend from Claims 41 and 51, respectively.  *Id.* at 5.  Plaintiff also argues that "Defendants improperly construe 'funds' as 'the transfer amount' because "[n]owhere do the [Plaintiff's] patents limit the

'transferring *funds*' to the 'funds transfer amount' or equate the meaning of those terms."  *Id.*

Defendants respond that Plaintiff "attempts to broaden the scope of the phrase beyond the specification's teachings."  Dkt. No. 395 at 1.  Defendants also argue that the claim "plainly requires actually transferring the funds" and that "[a]n instruction to transfer is not a transfer." *Id.*  Defendants also submits that where a second party receives money at a check cashing machine or automatic teller machine ("ATM"), the paper money is "transferred *directly* to the second party without ever reaching the second party's account."  *Id.* at 2.  Defendants further argue that Plaintiff's claim differentiation argument fails because Claims 42 and 52 of the '302 Patent require a series of "receiving" and "determining" step before the transferring step, such that no clear differentiation can be made.  *Id.*

Plaintiff replies that Defendants' proposal improperly limits the term to certain preferred embodiments. Dkt. No. 396 at 1.  Plaintiff also again cites dependent Claims 42 and 52 and argues that regardless of the presence of additional limitations, different terms within the same claim are presumed to have different meanings.  *Id.*  Plaintiff further submits he has not proposed that paper money transactions are encompassed by the term but rather has cited such embodiments to show the broad meaning of the word "transferring" as used in the patents-in-suit. *Id.* at 2.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary construction of this term to mean "to cause funds to pass from the first account to the second account, including by debiting or crediting."  Neither party agreed with this preliminary construction.  Plaintiff maintained that the construction should include that transferring can be accomplished by "instructing."

Defendants proposed modifying the preliminary construction as follows (emphasis added to show proposed changes): "to cause funds to pass from the first account *of the first party* to the second account *of the second party*, including by debiting *and* crediting."  Plaintiff argued that transferring can include more than just crediting and debiting.  Defendants responded that any transfer requires a debit and a corresponding credit, and Defendants argued that the claims at issue recite nothing about "instructing."

(2)  Construction

The term at issue appears in Claims 41 and 51 of the '302 Patent, which recite (emphasis added):

41. A method for authenticating the transfer of funds from a first account associated with a first party to a second account associated with a second party, the first account information being stored in a first storage means, and the second account information being stored in a second storage means, the method comprising:

receiving funds transfer information from the first party, including at least information for identifying the first account of the first party, and information for identifying the second account of the second party, and a transfer amount;

generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;

a third party for determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and

*transferring funds from the first account of the first party to the second account of the second party if* the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

. . .

51. A method for authenticating the transfer of funds from an account associated with a first party to an account associated with a second party, a credential being previously issued to at least one of the parties by a trusted party, the information

10

stored in the credential being non-secret, the method comprising:

> receiving funds transfer information, including at least information for identifying the account of the first party, and information for identifying the account of the second party, and a transfer amount;

> generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;

> determining whether the at least a portion of the received funds transfer information is authentic by using the VAN and the credential information; and

> *transferring funds from the account of the first party to the account of the second party if* the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

The "transferring" term in Claim 51 varies slightly from the "transferring" term in Claim 41, but the parties appear to agree that the terms are synonymous, so the Court treats them as such.

The limitations of Claims 41 and 51 are incorporated into dependent Claims 42 and 52, respectively.  Claims 42 and 52 recite additional steps, including a "debiting" and "crediting" step (emphasis added):

42. The method of claim 41 further comprising:

> receiving from the first party information for identifying the first party;

> determining whether the first party is authentic by using the information for identifying the first party;

> determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and

> *debiting the first account of the first party and crediting the second account of the second party with the funds transfer amount* if the at least a portion of the received funds transfer information is determined to be authentic.

52. The method of claim 51 further comprising:

> receiving from the first party information for identifying the first party;

> determining whether the first party is authentic by using the information for identifying the first party;
>
> determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and
>
> *debiting the account of the first party, and crediting the account of the second party with the funds transfer amount* if the at least a portion of the received funds transfer information is determined to be authentic.

In the absence of any compelling evidence to the contrary, this use of different terms suggests that "transferring" is not synonymous with "debiting" and "crediting." *Board of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings.") (citation omitted).

Defendants question what else a transfer could be other than a debit and a corresponding credit. Plaintiff's briefing and oral argument has not provided any examples, and the Court finds none in the written description. Perhaps one might imagine some sort of coupon program or merchant credit system in which amounts could be "transferred" without a debit and corresponding credit. Perhaps examination of the accused instrumentalities would shed light on this issue, but that is not the Court's task during claim construction. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008) ("A claim is construed in the light of the claim language . . . not in light of the accused device.") (citation and internal quotation marks omitted). Instead, the Court focuses foremost on the claims themselves. *See, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("We begin, as with all claim interpretation analyses, with the language of the claims."). Because the dependent claims demonstrate that transferring has a meaning distinct from debiting and crediting, the Court

rejects Defendants' argument that "transferring" must mean debiting and crediting.

At the December 16, 2010 hearing, Plaintiff suggested that Defendants oppose Plaintiff's proposal to include "instructing" in the construction because Defendants seek to create a "divided infringement" obstacle for Plaintiff. *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) ("[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'"). Here again, "[a] claim is construed in the light of the claim language . . . not in light of the accused device," so the Court declines to speculate about infringement scenarios. *Cohesive Techs.*, 543 F.3d at 1367.

In support of his "instructing another" language, Plaintiff has cited the following disclosure in the written description:

> At block 72 (FIG. 8A), the recipient's bank receives the originator's bank's *instructions*. It will then notify the recipient if the check has been dishonored. If the check has been honored, the recipient's account may be credited as in a deposit. Alternately, the recipient can receive payment immediately if he is at an appropriate terminal, such as an automatic teller machine.
>
> Essentially, the check has cleared automatically, on-line, without further check handling or processing.

'302 Patent at 7:39-48 (emphasis added). Because the patent discloses instructions sent in connection with a transfer, Plaintiff submits that the construction of "transferring" should including "instructing another" to debit or credit. But the question is not whether the written description would support a claim directed to "instructing another" in connection with a transfer. The question is what the claims at issue actually recite. As Defendants properly point out, the

13

above-quoted Claims 41 and 51 recite "transferring," not merely "instructing another."

In addition, "funds transfer information" might itself amount to a "transfer" under Plaintiff's proposed construction because "funds transfer information" could be viewed as a set of instructions. Thus, the presence of "funds transfer information" in Claims 41 and 51 is further evidence that "transferring" does not include "instructing another." In other words, accepting Plaintiff's proposed construction for "transferring" could mean that the "funds transfer information" itself satisfies the "transferring" step, which might in turn render the "transferring" step redundant. In sum, the Court rejects Plaintiff's proposal regarding "instructing another."

Finally, Defendants' brief provides no support for reading "funds" to mean "transfer amount," and the Court finds no discussion of "transfer amount" in the written description. The Court therefore rejects Defendants' proposal in this regard. *See* Dkt. No. 395 at 1-2.

The Court construes "transferring funds from the first account of the first party to the second account of the second party if" to mean "to cause funds to pass from the first account of the first party to the second account of the second party, such as by debiting or crediting."

**B.  "party"**

Plaintiff proposes this term means "a person or entity, computer system(s), or a person or entity using a computer system(s)." Dkt. No. 390 at 6. Defendants propose this term means "a person or legal entity, including computer systems put in use by that person or entity." Dkt. No. 395 at 2.

(1)  Parties' Positions

The parties agree that a "party" can include a computer system, but the parties dispute whether a computer system can, by itself, be a "party." *See* Dkt. Nos. 390 at 6 & 395 at 3.

14

Plaintiff argues, citing the claims and the prosecution history, that "[c]ompelling intrinsic evidence confirms that a computer system — by itself — can be a 'party.'"  Dkt. No. 390 at 6.

Defendants respond that in single-party transactions, "the specification clearly defines a person (*i.e.*, the 'customer') and the computer system (*i.e.*, the 'automatic teller machine') used by that person to be a single party."  Dkt. No. 395 at 3.

Plaintiff replies that Defendants' proposal that a "party" always includes a "person or legal entity" contradicts the intrinsic evidence.  Dkt. No. 396 at 2.  Plaintiff submits that Claim 17 of the '302 Patent recites that a party can be "a person *or* a computer program."  *Id.* at 2 (emphasis modified).  Plaintiff also cites prosecution history in which the patentee explained that the "third party" in Claim 41 is a "system," *i.e.*, a computer system.  *Id.* at 3.  Plaintiff further notes that his proposal does not require that a "party" must be a computer system but merely states that a "party" can be a "person or entity" *or* a "computer system."  *Id.*

At the December 16, 2010 hearing, the parties reiterated their arguments.  Defendants urged that unlike a "party," a computer system cannot have an account.  Defendants further submitted that the specification refers to a "party" 152 times without referring to a computer alone as being a party.  Defendants concluded that although a party can certainly be a computer, that computer must be operated by a person or entity.

(2)  Construction

The preamble of Claim 41 recites, in relevant part, "A method for authenticating the transfer of funds from a first account associated with a first party to a second account associated with a second party."  The claims in which "party" appears, as well as the specification, demonstrate that when a party has an account, that party is a person or a legal entity.

15

Nonetheless, the claims and the patentee sometimes refer to a "party" without referring to any account associated with that party. Plaintiff cites prosecution history to this effect. *See* 11/7/1997 Amendment, Dkt. No. 390, Ex. H at 54-55 ("In this scheme, the payment originator is a first party, the recipient is a second party, and the system which approves or disapproves the payment is a third party."). Also, Claim 41 recites, in relevant part, "a third party for determining whether the at least a portion of the received funds transfer information is authentic by using the VAN." Claim 41 does not recite any account associated with this "third party." On balance, the term "party," by itself, can be a computer system and need not always include a person or legal entity.

The Court construes "party" to mean "a person or entity, a computer system or systems, or a person or entity using a computer system or systems."

## C. "coding"

Plaintiff proposes this term means "transforming information by applying a known algorithm." Dkt. No. 390 at 6. Defendants propose this term means "transforming original information into coded information by applying a known algorithm but excluding transforming coded information back into its original state." Dkt. No. 395 at 3.

### (1) Parties' Positions

Plaintiff argues that his proposed construction is "battle-tested," having been adopted by the District of Delaware in *RSA*, as well as by this Court in *JPMorgan* and *Merrill Lynch*. Dkt. No. 390 at 6. Plaintiff further submits that the patents-in-suit expressly define coding by disclosing a "coder" that "may be any form of such device utilizing a known algorithm." *Id.* at 7 (citing '302 Patent at 3:37-39) (emphasis omitted).

16

Defendants submit that Plaintiff's proposal would include "uncoding" in the construction

of "coding," thereby improperly eliminating the distinction between "coding" and "uncoding" in

the written description.  Dkt. No. 395 at 4 (citing *AFG Indus., Inc. v. Asahi Glass Co., Ltd.*, 239

F.3d 1239, 1248 (Fed. Cir. 2001)).  Defendants argue that their proposed construction is

consistent with this Court's prior, distinct constructions of "coding" and "uncoding," whereas

Plaintiff's current proposal is not.  *Id.*  Defendants also argue that review of the complete

sentence cited by Plaintiff from the written description states a common characteristic of coders

and uncoders and does not justify an expansive construction of "coding."  *Id.* at 5.

Plaintiff replies that Defendants' proposal is unclear and that the Court in *Merrill Lynch*

properly rejected Defendants' proposed exclusion.  Dkt. No. 396 at 4.

At the December 16, 2010 hearing, Plaintiff argued that the term "coding" is broad

enough to include uncoding because some coders can also uncode.  For example, Plaintiff

argued, some coders that convert uncoded information into coded information can also be used to

convert that coded information back into the original uncoded information.  In other words, for

some coders, running coded data through the same coder that did the coding can yield the

original uncoded data, without use of a separate uncoder.  Defendants responded that the written

description, as well as the Court's previous constructions, have acknowledged that coding and

uncoding are distinct, non-overlapping concepts.

Plaintiff further argued that Defendants' proposed construction creates inconsistencies in

situations of "double-coding."  For example, data "A" can be coded into coded data "B," which

can in turn be coded into coded data "C."  Coded data "C" might be referred to as "double-

coded" data, having been twice coded.  Plaintiff argued that including "original information" or

"original state" in the construction, as Defendants propose, would lead to confusion about whether coded data "B" could ever be considered "original information," even with respect to the coded data "C."

(2)  Construction

As the Court found in *Merrill Lynch*, the patentee set forth "coding" and "uncoding" as distinct terms.  *See Merrill Lynch* Order at 18-19.  The Court found that "uncoding" means "transforming coded information back into its original state."  *Id.* at 19.  Construing "coding" to include "uncoding" would contradict the patentee's use of distinct terms.  *See, e.g.,* '302 Patent at 3:46-48 ("An uncoder (FIG. 2) reverses the process of the coder.").  That some coders might also serve as uncoders is not inconsistent with this finding, and Plaintiff has not shown that this unique situation is addressed anywhere by the specification.  "Coding" and "uncoding" thus remain distinct.  Finally, despite Plaintiff's objection to the contrary, the phrases "original information" and "original state" in Defendants' proposal is sufficiently clear and does not rule out "double-coding."  In sum, the Court rejects Plaintiff's proposal and adopts Defendants' proposal.

The Court construes "coding" to mean "transforming original information into coded information by applying a known algorithm but excluding transforming coded information back into its original state."

**D.  "coding the EDC1 using a secret key of the originator"**

Plaintiff proposes this term means "transforming the EDC1 by applying a known algorithm using a secret key of the originator."  Dkt. No. 390 at 7.  Defendants' proposal is identical except for adding the word "reversibly" to the beginning of Plaintiff's proposal.  Dkt.

No. 395 at 7.

Plaintiff argues that "[b]y 1992, both irreversible and reversible coding algorithms were well-known." Dkt. No. 390 at 7. Defendants incorporate their arguments as to the terms "coding" and "and then coding the result using third information." Dkt. No. 395 at 7. At the December 16, 2010 hearing, the parties addressed those two other terms, as well.

Defendants have not shown sufficient basis for requiring that the coding be "reversible," and the Court declines to import such a limitation from any of the preferred embodiments. The Court therefore rejects Defendants' proposal.

The Court construes "coding the EDC1 using a secret key of the originator" to mean "transforming the EDC1 by applying a known algorithm using a secret key of the originator."

**E. "and then coding the result using third information"**

Plaintiff proposes this term means "and thereafter transforming the result by applying a known algorithm using third information." Dkt. No. 390 at 7. Defendants propose this term means "reversibly transforming the result by applying a known algorithm using a key (the third information) without intervening operations." Dkt. No. 395 at 5.

(1) Parties' Positions

First, Plaintiff argues that as with the term "coding the EDC1 using a secret key of the originator," "there is no basis in the claims, specification, or file history for limiting 'coding' to 'reversibl[e]' transformations." Dkt. No. 390 at 7. Second, Plaintiff argues that Defendants' "without intervening operations" limitation should be rejected because "the patents describe numerous instances where a first piece of information is coded using a second piece of information, and later — after intervening operations — the result of coding the first and second

19

pieces of information is coded using a third piece of information." *Id.* at 8 (emphasis omitted). Third, Plaintiff argues that limiting the "third information" to be a "key," as Defendants propose, would be "inconsistent with the ordinary meaning of 'information'" and would contradict the specification. *Id.*

Defendants respond first that the word "then" in the term-at-issue must carry meaning, which Defendants submit is that no intervening operations occur. Dkt. No. 395 at 6. Defendants also submit such a reading is consistent with the written description. *Id.* Second, Defendants argue that "[i]n each instance where third information is disclosed, it is disclosed in the form of a key," and Defendants urge that the written description does not support any broader reading. *Id.* at 6-7. Third, Defendants argue that "[t]he specification only discloses reversible transformation when coding using a key [and] [i]rreversible coding is never disclosed as using a key." *Id.* at 7.

Plaintiff replies that Defendants rely on dictionary definitions of "then" but many definitions do not require the absence of intervening steps. Dkt. No. 396 at 4. Plaintiff further reiterates that the word "information" is broader than a "key." *Id.* at 4-5.

At the December 16, 2010 hearing, Plaintiff proposed a compromise of replacing "thereafter" in Plaintiff's proposed construction with "soon after." Defendants were not agreeable to Plaintiff's new proposal. Plaintiff also argued that the "third information" need not be a cryptographic key because the specification discloses that a VAN can be generated directly from transaction information. Defendants argued that regardless of what the "third information" is, it functions as a key.

(2)  Construction

Claim 7 of the '302 Patent recites (emphasis added):

20

7. A method for coding first information, the method comprising:

coding the first information using second information *and then coding the result using third information*, at least one of the second and third information being associated with at least one entity, the entity comprising a person or a computer program, wherein a credential having non-secret information stored therein is previously issued to at least one entity by a trusted entity, the non-secret information including the second or third information.

First, Defendants have not shown sufficient basis in the claim for requiring that the coding be "reversible," and the Court declines to import such a limitation from any of the preferred embodiments. Second, the parties dispute the plain meaning of "then," but a fair reading is that "then" refers more to order than to immediacy, so the Court rejects Defendants' proposal to include the phrase "without intervening operations" in the construction. The Court also rejects Plaintiff's compromise proposal of "soon after," which is too vague. Third, the claim at issue recites "information," and Defendants have not sufficiently justified requiring that this information be a "key." Although Defendants argue that any type of information can be used so long as it functions as a "key," the claim itself is clear enough that the third information is used as a key. Including the term "key" in the construction might lead a finder of fact to believe that some special, unspecified type of information must be used, and Defendants have not shown that the specification would justify any such limitation.

The Court construes "and then coding the result using third information" to mean "and thereafter transforming the result by applying a known algorithm using third information."

**F.   "variable authentication number (VAN)"**

Plaintiff proposes this term means "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both, the number generated by

21

coding information relevant to a transaction, document, or thing with either a joint key or information associated with or assigned or related to at least one party to the transaction or issuance of the document or thing." Dkt. No. 390 at 9. Defendants propose this term means "an encoded variable number constructed to allow verification that information is not fraudulent." Dkt. No. 395 at 8.

    (1) Parties' Positions

    Plaintiff argues this is a term "coined" by the patentee, defined by the specification, and has meaning that depends in part on how it is created. Dkt. No. 390 at 9-10. Plaintiff submits that part of his proposal is consistent with the Court's constructions in *JPMorgan* and *Merrill Lynch* and that the remainder is a subject of a pending objection in *Merrill Lynch*. *Id.* at 9-10; *see* C.A. No. 2:08-CV-462, Dkt. No. 424 at 2-5. Plaintiff argues that contrary to the Court's finding in *Merrill Lynch*, "the claims themselves do not necessarily reflect how a VAN is created." Dkt. No. 390 at 10.

    Defendants respond that their proposal is consistent with the Court's constructions in *JPMorgan* and *Merrill Lynch* and that Defendants simply modified the construction "to better reflect the overwhelming evidence that a VAN is always directed to accomplishing the goal of verifying that neither the document information nor the identity information is fraudulent." Dkt. No. 395 at 8. Defendants argue that "Plaintiff's construction is inconsistent with the patents because it does not require the VAN to be usable to verify the identity of a party." *Id.* at 9. Defendants also cite statements in the *JPMorgan* Order that the VAN is "central to the invention" and "thwarts fraud." *Id.*

    Plaintiff replies that Defendants' proposal that the construction refer to "fraud" is

"amorphous" and is potentially too limited.  Dkt. No. 396 at 5-6.

At the December 16, 2010 hearing, the Court provided a preliminary construction of this term to mean "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both."  Neither party agreed with this preliminary construction. Defendants proposed replacing "or" with "and" such that the latter half of the construction would read "verifying the identity of a party *and* the integrity of information."  Plaintiff maintained that the construction should include Plaintiff's proposed language regarding how the VAN is generated.

The parties reiterated their arguments from their briefing as to "VAN" and the related authenticity terms.  Plaintiffs argued that "not fraudulent" is too vague and overbroad to include in any construction because there are many types of fraud that are not the subject of the claimed inventions, such as preventing fraudulent check reuse, which is addressed not by the VAN but by a bank keeping a record of what checks have been cashed, for example.  Defendants argued that the overarching purpose of the purported invention is verifying that *all* aspects of a transaction are not fraudulent.  Defendants also argued that Plaintiff's proposed language about what is used to create the VAN is unnecessary because the relevant claims recite what is used.

(2)  Construction

The Court agrees with Plaintiff that Defendants' proposal to include fraud prevention in the construction is inaccurate and potentially confusing.  As Plaintiff has argued, the patents-in-suit address certain types of fraud but do not purport to prevent all conceivable types of fraud. The Court similarly rejects Defendants' proposal to modify the Court's preliminary construction to state "verifying the identity of a party *and* the integrity of information."  On this point,

23

Defendants rely primarily on their arguments regarding the term "authentic" and related terms, wherein Defendants argue that the patents-in-suit require verifying that a transaction is "not fraudulent."  The Court rejects that argument, as discussed with respect to those other terms. Further, disclosures in the specification regarding the objective of verifying identities is insufficient to require that the VAN is always used for verifying identities.  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008) ("[I]t is generally not appropriate to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention. . . . An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them.") (citation and internal quotation marks omitted).  Defendants have not otherwise shown that the VAN must always be used for verifying *both* identity *and* integrity of information.

The Court nonetheless rejects Plaintiff's proposal to limit the construction to particular ways of generating the VAN.  Plaintiff cites two passages, one from the "Summary of the Invention" and one from the "Detailed Description of the Preferred Embodiments."  Dkt. No. 390 at 9-10.  The Summary states that a "joint code" is used in creating a VAN.  '302 Patent at 2:14-17.  The Detailed Description states: "Note that the VAN is alternatively generated directly from INFO and information associated with at least one of the parties, without the intermediate step of generating the [joint key]."  *Id.* at 5:22-25.  In other words, the Summary provides a general principle, but the Detailed Description includes an alternative.  The specification thus discloses that the VAN may be generated in a number of different ways, and the construction of "VAN" should not be limited to any particular embodiment.  The Court instead applies the construction of this term from *Merrill Lynch*.  *See Merrill Lynch* Order at 9-10.

The Court construes "variable authentication number (VAN)" to mean "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both."

## G.  "using at least a portion of the received funds transfer information"

Plaintiff proposes this term should be construed according to plain meaning or, alternatively, should be construed to mean "using some, but not necessarily all, of the received funds transfer information."  Dkt. No. 390 at 10.  Defendants propose this term means "using at least some of the information for identifying the first account of the first party, at least some of the information for identifying the second account of the second party, and at least some of the transfer amount."  Dkt. No. 395 at 9.

### (1)  Parties' Positions

Plaintiff argues that "[t]he claims do not require 'using at least a portion' of *each* type of information in the 'received funds transfer information,'" as Defendants propose.  Dkt. No. 390 at 11.  Defendants respond that "[t]he '302 patent consistently requires that the 'portion of received funds transfer information' be comprised of multiple types of information" and that "a portion of *all* of the information must be used."  Dkt. No. 395 at 10.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary construction of this term to mean "using some of, but not necessarily all types of, the received funds transfer information."  Plaintiff was agreeable to this preliminary construction.  Defendants maintained their original proposal.  Defendants urged that for the claimed invention to work, all of the transaction information is necessary.  Finding otherwise, Defendants argued, would be inconsistent with the purpose of the invention to authenticate the entire transaction.  Plaintiff

responded that Defendants are attempting to re-write the claim, and Plaintiff argued that the written description discloses generating a VAN from any portion of the transaction information.

(2)  Construction

Claims 41 and 51 both recite, in relevant part:

> receiving funds transfer information . . ., including at least information for identifying the . . . account of the first party, and information for identifying the . . . account of the second party, and a transfer amount;

> generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;

The most natural reading of Claims 41 and 51 is that "a portion of the received funds transfer information" can be any portion thereof and need not be a portion of each type of information recited.  Defendants cite an embodiment that uses several types of funds transfer information (*see* Dkt. No. 395 at 10 (citing '302 Patent at 24:14-17)), but Defendants have not sufficiently justified a departure from the most natural reading.

The Court construes "using at least a portion of the received funds transfer information" to mean "using some of, but not necessarily all types of, the received funds transfer information."

**H.  "secret key of the payor/first party/originator"**

Plaintiff proposed this term means "a private key that is created by the payor/first party/originator, or an entity originating an instrument on the payor's/first party's/originator's behalf, by coding information associated with or related to the payor/first party/originator, which is capable of being separately created by a party intended to authenticate the instrument."  Dkt. No. 390 at 11.  Defendants proposed this term means "key that is generated by coding information associated with and known, prior to any coding, only by the first

26

party/payor/originator, for use in any future transaction." Dkt. No. 395 at 10.  Both sides thus

disagreed with the *Merrill Lynch* Order, which construed this term to mean "a key that is known

only to the payor/first party/originator and those intended to know it."  *Merrill Lynch* Order at

10-11.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary

construction of this term to mean "key that is generated by coding information associated with

and known, prior to any coding, only by the first party/payor/originator and those intended to

know it."  All parties were agreeable to this construction.  The Court therefore construes the term

accordingly.

## I.  "including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument"

Plaintiff proposes this term means "including the VAN with the instrument for

subsequent use in verifying that the information in the instrument has not changed and verifying

that the instrument originated from the first party."  Dkt. No. 390 at 14.  Defendants propose this

term means "including the VAN with the instrument for subsequent use in verifying that the

instrument is not fraudulent."  Dkt. No. 395 at 14.

(1)  Parties' Positions

Plaintiff submits that his construction was adopted in *JPMorgan* and was agreed in

*Merrill Lynch*.  Dkt. N. 390 at 14.  Plaintiff argues that "Defendants' construction is unhelpful

and confusing" because the phrase "not fraudulent" could refer to several different types of fraud

and would therefore be "ambiguous and difficult for a jury to apply."  *Id.*

Defendants respond that Plaintiff's proposal "does not account for the myriad types of

fraud identified in his brief or in the patents." Dkt. No. 395 at 14. Defendants also note that verifying that an instrument originated from a first party is not the same as verifying identity of a payor or of all parties. *Id.*

Plaintiff replies by reiterating that Defendants' proposal that the construction refer to "fraud" is "amorphous" and is potentially too limited. Dkt. No. 396 at 5-6.

(2) Construction

The Court agrees with Plaintiff that Defendants' proposal to include fraud prevention in the construction is potentially confusing and overbroad. As the parties agreed in *Merrill Lynch*, the Court construes this term in accordance with Plaintiff's proposed construction.

The Court construes "including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument" to mean "including the VAN with the instrument for subsequent use in verifying that the information in the instrument has not changed and verifying that the instrument originated from the first party."

**J. "the originator's VAN being usable to determine the authenticity of the one or more pieces of payment information"**

Plaintiff proposes this term means "the originator's VAN being usable to verify that the one or more pieces of payment information has not changed and to verify that the one or more pieces of payment information originated from the originator party." Dkt. No. 390 at 14. Defendants propose this term means "the originator's VAN being usable to verify that the one or more pieces of payment information are not fraudulent." Dkt. No. 395 at 15.

(1) Parties' Positions

Plaintiff submits that his proposal is based on the Court's construction in *JPMorgan* and

is "true to the ordinary meaning of 'authentic' and the specification."  Dkt. No. 390 at 15.

Plaintiff argues that "Defendants' use of the term 'fraudulent' only injects ambiguity into the

claim."  *Id.*

Defendants respond that this term was not disputed in *JPMorgan* or *Merrill Lynch* and

that Defendants' proposal "is consistent with the intrinsic record and the goal of the [Plaintiff's]

invention – to thwart fraud."  Dkt. No. 395 at 15.

Plaintiff replies that Defendants' proposal that the construction refer to "fraud" is

"amorphous" and is potentially too limited.  Dkt. No. 396 at 5-6.

(2)  Construction

The Court agrees with Plaintiff that Defendants' proposal to include fraud prevention in

the construction is potentially confusing and overbroad.  As the parties agreed in *Merrill Lynch*,

the Court construes this term in accordance with Plaintiff's proposed construction.

The Court construes "the originator's VAN being usable to determine the authenticity of

the one or more pieces of payment information" to mean "the originator's VAN being usable to

verify that the one or more pieces of payment information has not changed and to verify that the

one or more pieces of payment information originated from the originator party."

**K.  "the VAN being used for attesting to the authenticity of the payor and document
information"**

Plaintiff proposes this term means "the VAN being used to verify that the instrument

originated from the payor and that the at least a portion of the document information used to

create the VAN has not changed."  Dkt. No. 390 at 15.  Defendants propose this term means "the

VAN being used to verify that the identity of the payor and the document information used to

create the VAN are not fraudulent."  Dkt. No. 395 at 15.

(1)  Parties' Positions

Plaintiff submits that his proposal was adopted by the Court in *JPMorgan* and agreed to by the parties in *Merrill Lynch*.  Dkt. No. 390 at 15.  Plaintiff submits that this term relates to "origin verification," not "identity verification."  *Id.*  This is because, Plaintiff argues, in "funds transfer embodiments" the originator is not present, such that "there is no need or ability to verify the originator's identity."  *Id.* at 16.  Plaintiff further argues that Defendants' use of the term "fraudulent" is "unhelpful and ambiguous."  *Id.*

Defendants respond that "Plaintiff's construction would improperly deem a transaction authentic where an unauthorized party to a funds transfer generates the funds transfer information."  Dkt. No. 395 at 16.

Plaintiff replies that Defendants' proposal that the construction refer to "fraud" is "amorphous" and is potentially too limited.  Dkt. No. 396 at 5-6.

(2)  Construction

The disputed term appears only in Claim 28 of the '148 Patent, which recites (emphasis added):

28. A payment method, comprising:

a payer obtaining a document containing document information, the document information being associated with a debt incurred by the payer or for goods or for services to be paid for or purchased by the payor;

the payer creating a variable authentication number (VAN) on a computer using at least a portion of the document information, and a secret key of the payor, the document information including an amount, and information for identifying the payee, *the VAN being used for attesting to the authenticity of the payor and document information*; and

the payor creating a payment instrument using the document information and appending the VAN to the payment instrument, the payment instrument being used to pay for the incurred debt or for the purchase of goods or services.

The Court agrees with Plaintiff that Defendants' proposal to include fraud prevention in the construction is potentially confusing and overbroad.

The parties' distinction between verifying origin and verifying identity is a subtle one, but Plaintiff persuasively submits that because the payor is not always present to be identified, the disputed term is directed to authenticity of origin. *See also JPMorgan* Order at 17 ("The VAN merely confirms that the account holder originated the instrument. The VAN does not confirm that the account holder is who he says he is."). As the parties agreed in *Merrill Lynch*, the Court construes this term in accordance with Plaintiff's proposed construction.

The Court construes "the VAN being used for attesting to the authenticity of the payor and document information" to mean "the VAN being used to verify that the instrument originated from the payor and that the at least a portion of the document information used to create the VAN has not changed."

## L.  "the VAN attesting to the authenticity of the first party and the first information"

Plaintiff proposes this term means "the VAN being used to verify that the first information originated from the first party and that the first information has not changed." Dkt. No. 390 at 16.  Defendants propose this term means "the VAN being used to verify that the identity of the first party and the first information used to create the VAN are not fraudulent." Dkt. No. 395 at 16.

(1)  Parties' Positions

Plaintiff submits that his proposal is based on an agreed construction for a similar term in

*Merrill Lynch*, namely "the VAN attesting to the authenticity of the payor and document

information."  Dkt. No. 390 at 16.  Plaintiff argues that "Defendants' construction is ambiguous

and injects the concept of identity verification."  *Id.* at 17.

Defendants submit that this term should be construed consistent with another disputed

term in the above-captioned case, namely "the VAN being used for attesting to the authenticity of

the payor and document information."  Dkt. No. 395 at 16.

Plaintiff replies that Defendants' proposal that the construction refer to "fraud" is

"amorphous" and is potentially too limited.  Dkt. No. 396 at 5-6.

(2)  Construction

The disputed term appears only in Claim 1 of the '148 Patent, which recites (emphasis

added):

> 1. A method of transferring funds from a first party to a second party, the method
> comprising:
>
> creating a variable authentication number (VAN) on a computer using first
> information and a secret key of the first party, the first information including an
> amount and information for identifying the first party or the second party, *the VAN
> attesting to the authenticity of the first party and the first information*;
>
> creating an instrument by the first party for transferring funds to the
> second party, the instrument including the first information and the variable
> authentication number (VAN) and attaching the VAN to the instrument.

The Court construes this term consistent with its construction of "the VAN being used for

attesting to the authenticity of the payor and document information," above.  The Court

accordingly adopts Plaintiff's proposal and construes "the VAN attesting to the authenticity of

the first party and the first information" to mean "the VAN being used to verify that the first information originated from the first party and that the first information has not changed."

## M. "authentic"

Plaintiff proposes that "[t]his term is used differently in different contexts throughout the patents." Dkt. No. 390 at 17. Defendants propose this term means "not fraudulent." Dkt. No. 395 at 12.

### (1) Parties' Positions

According to Defendants, "[t]he parties agree that 'not fraudulent' is one correct meaning of 'authentic,' but disagree about whether the term has other meanings." Dkt. No. 395 at 12.

Plaintiff argues that "p[ri]or constructions of phrases that include the term 'authentic' [in *JPMorgan* and *Merrill Lynch*] confirm that 'authentic' means 'unchanged, from a stated origin, or not fraudulent.'" Dkt. No. 390 at 17.

Defendants argue that "the authentication process confirms that all aspects of the transaction (*i.e.*, the paying party, the receiving party, and the transaction information) are not fraudulent." Dkt. No. 395 at 13. Defendants further argue that "[t]he additional elements in Plaintiff's proposed construction dilute the meaning of 'authentic' to the point of undermining the entire purpose of Plaintiff's invention." *Id.* For example, Defendants submit, if a stolen check is filled in and used, the check would be "unchanged" from the time it was filled in, but it would still be a fraudulent check. *Id.*

Plaintiff replies that Defendants' proposal that the construction refer to "fraud" is "amorphous" and is potentially too limited. Dkt. No. 396 at 5-6.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary

construction of this term to mean "unchanged, from a stated origin, or not fraudulent." Plaintiff

was agreeable to this construction. Defendants maintained their original proposal.

### (2)  Construction

The Court agrees with Plaintiff that Defendants' proposal to include fraud prevention in

the construction is potentially confusing and overbroad. Further, the written description supports

a construction of "authentic" that includes "unchanged":

> At block 169, the INFO from the credential is compared to the INFO recovered
> from uncoder 162. Should the comparison fail, this is an indication that INFO on
> the credential has been *modified*, and the credential is indicated as *not being
> authentic*. Should the comparison be successful, this is an indication that INFO is
> accurate, and the authenticity of the credential is confirmed.

'302 Patent at 13:17-24 (emphasis added). The Court therefore construes "authentic" in

accordance with the agreed constructions in *JPMorgan* and *Merrill Lynch*.

The Court construes "authentic" to mean "unchanged, from a stated origin, or not

fraudulent."

## N.  "credential"

Plaintiff originally proposed this term means "a non-secret document or information

obtained from a trusted source that is transferred or presented for purposes of determining the

identity of a party." Dkt. No. 390 at 18. At the December 16, 2010 hearing, Plaintiff dropped

"non-secret" from his proposed construction.

Defendants propose this term means "a document or information obtained from a trusted

source that is transferred or presented to establish the identity of a party." Dkt. No. 395 at 16.

### (1)  Parties' Positions

Plaintiff submits that his proposal is identical to the Court's constructions in *JPMorgan*

34

and *Merrill Lynch*. Dkt. No. 390. Plaintiff argues that although a "credential" is "used for purposes of determining the identity of the party presenting the credential," it does not, by itself, establish identity. *Id.* at 19 (emphasis omitted).

Defendants argue that Plaintiff's proposal is inconsistent with the written description, which purportedly discloses that a "credential" establishes identity because the claimed systems "limit the use of the credential to the sole individual to whom it was issued." Dkt. No. 395 at 17 (quoting '302 Patent at 12:20-25).

Plaintiff replies that Defendants' proposal "confuses the term 'credential' with the disclosed systems and methods for issuing and authenticating a credential. A credential by itself (*e.g.,* a student ID) does not limit its use to its owner. The disclosed systems as a whole do." Dkt. No. 396 at 7.

At the December 16, 2010 hearing, Plaintiff emphasized that the term at issue is "credential," not the entire credential issuing and authenticating system.

<u>(2)  Construction</u>

The Court rejects Defendants' proposal that a credential must *by itself* establish identity. Instead, disclosure of a "credential authentication process" shows that a credential is merely part of a system for determining identity. *See* '302 Patent at 12:16-57.

The Court construes "credential" as in *Merrill Lynch* to mean "a document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party."

**O.  "trusted entity/party"**

Plaintiff proposes this term means "an entity/party that has the authority or ability to

establish or confirm a party's identity." Dkt. No. 390 at 19.  Defendants propose this term means
"an entity/party that has the officially recognized authority to establish or confirm a party's
identity." Dkt. No. 395 at 18.

    (1)  Parties' Positions

    Plaintiff submits that his construction was the Court's construction in *Merrill Lynch* and
"reflects the broad range of disclosed credentials without improperly limiting the inventive
concepts to a particular 'officially recognized' environment." Dkt. No. 390 at 19.  Plaintiff also
argues that "the concept of 'officially recognized' authority is vague and ambiguous." *Id.* at 20.

    Defendants respond that the written description describes a credential-issuing process that
requires an "authorized official" who then enrolls users.  Dkt. No. 395 at 18 (citing '302 Patent at
8:49-54).  Defendants also argue that "Plaintiff's construction should be rejected because the
meaning of 'ability to confirm a party's identity' is unclear and would only render the term
indefinite." *Id.*

    Plaintiff replies that Defendants' proposal impermissibly imports a limitation from a
preferred embodiment.  Dkt. No. 396 at 8.

    At the December 16, 2010 hearing, Plaintiff reiterated that the meaning of Defendants'
proposed phrase "officially recognized authority" is unclear and is too narrow if meant to refer to
a government agency.  Defendants responded that "officially recognized authority" means
"someone with authority recognized by the participants involved."

    (2)  Construction

    The Court agrees with Plaintiff that "officially recognized authority" is ambiguous and is
not compelled by the claims or the written description.  The passages cited by Defendants relate

36

to particular embodiments and do not justify limiting the term at issue.  *See* '302 Patent at 1:28-32, 8:49-54, & 11:34-38.  Defendants comments at the hearing nonetheless reach the heart of the issue, which is that the entity or party at issue has authority by virtue of that authority being recognized by the participants in the relevant system or method.  The *Merrill Lynch* Order made a similar finding: "The trusted entities are relied upon to issue credentials because they are trusted, and they are trusted to do so because they have the authority or ability to establish or confirm a party's identity."  *Merrill Lynch* Order at 12.  Finally, Defendants properly submit that the word "ability," which Plaintiff proposed including in the construction, does not appear in the specification and is potentially vague and confusing.  Instead, the patent discusses "authority." *See, e.g.,* '302 Patent at 8:49-50, 10:8-10, & 17:15-16.  Out of an abundance of caution, the Court modifies the construction reached in *Merrill Lynch* to remove "ability."  *See Merrill Lynch* Order at 12.

The Court construes "trusted entity/party" to mean "an entity/party that has the authority, as recognized by participants in the relevant system or method, to establish or confirm a party's identity."

**P.  "previously issued"**

Plaintiff proposes this term means "issued before the execution of the steps recited in the claim."  Dkt. No. 390 at 21 & 22.  Defendants propose this term means "issued before the execution of a requirement of the claim."  Dkt. No. 395 at 18.

(1)  Parties' Positions

As to Claim 7 of the '302 Patent, Plaintiff proposes that the "wherein" clause "is a descriptive phrase" rather than "a separate, additional step," as Defendants purportedly propose.

Dkt. No. 390 at 21.  As to Claim 47 of the '302 Patent, Plaintiff proposes that the claim does not include a step of "issuing a credential to at least one party" but "merely requires at least one party being previously issued a credential." *Id.* at 22 (emphasis omitted).  As to Claim 51, Plaintiff similarly proposes that the "previously issued" language is not a claim step.  *Id.*  This last issue is addressed separately in Section III.BB, below, regarding whether the preamble of Claim 51 is a limitation.

Defendants argue as to all claims at issue that "Plaintiff's proposal both unnecessarily requires the issuance to occur prior to execution of all the claim steps and also eliminates the prior issuance from being a claim step."  Dkt. No. 395 at 19.  Instead, Defendants argue, the plain meaning of "previously" only requires that "the action of previously issuing a credential must occur prior to at least one other requirement of the claim."  *Id.*

(2)  Construction

In short, the parties dispute whether the credential must be issued before at least one of the recited steps is performed or must be issued before *any* of the recited steps are performed.

The Court found in *Merrill Lynch* that "previously issued" means "issued before the execution of the steps recited in the claim."  Claim 7 recites only one step, which is "coding," so the issuance must occur before that one step.  Claims 47 and 51 present greater difficulty because they each recite multiple steps.  The written description provides no real guidance on the meaning of "previously" in this situation.

Also, review of the patentee's use of "previously" in other claims leads to less clarity rather than more.  For example, Claim 1 of the '302 Patent recites four steps as being performed "previously," but reading "previously" to mean "before all other steps" would leave unresolved

whether these multiple "previously" steps must have been "previously" performed in any particular order. That is, if all four previously-performed steps must truly have been performed before all others, including the other previously-performed steps, one could not decide which previously-performed step comes first. This problem might be resolved by finding that "previously" means "before all other non-previous steps," but the claims now at issue only use "previously" once, so the Court need not resolve this issue. In sum, the use of "previously" in other claims does not aid in construing the present term.

On balance, the plainest reading of "previously issued" in Claims 7, 47, and 51 remains the construction reached by the Court in *Merrill Lynch*, which the Court here adopts.

The Court construes "previously issued" to mean "issued before the execution of the steps recited in the claim."

## Q.  "first/second storage means"

Plaintiff proposes this is not a means-plus-function term subject to 35 U.S.C. § 112, ¶ 6, and Plaintiff proposes this term means "a first/second place for storing information, which may include a computer file." Dkt. No. 390 at 23. Alternatively, Plaintiff proposes that the § 112, ¶ 6 function would be "storing the first/second account information" and that the corresponding structure would be "documents, files, memory or other computer storage, tables, [and] personal storage media." *Id.* Defendants propose that this is a means-plus-function term subject to § 112, ¶ 6, that the function is "storing the first/second party's account information," and that the corresponding structure is the "first/second party's bank's computer." Dkt. No. 395 at 19.

(1)  Parties' Positions

Plaintiff submits that his proposal was adopted in *Merrill Lynch*, and Plaintiff quotes the

39

Court's finding that "'storage means' was well defined in the art at the time of the invention."

Dkt. No. 390 at 23 (quoting *Merrill Lynch* Order at 16-17).  Alternatively, Plaintiff argues that

Defendants' proposed function is incorrect because Claim 41 of the '302 Patent "recites that the

first/second account is '*associated with*' the first/second party — not that it *is* the first/second

party's account."  Dkt. No. 390 at 23.  Plaintiff also argues that Defendants' proposed structure

excludes the "paperless/cashless embodiment," in which "the payment recipient may be the party

selling a good or service, such as a retailer — which is not a bank."  *Id.* at 24.

Defendants respond that the Court should reject Plaintiff's arguments that "storage

means" have been well-known in the computer art because "nothing in claim 41 restricts use of

the method to a computerized system."  Dkt. No. 395 at 20.  Defendants also argue that their

proposed function is proper because "the only structure corresponding to the 'storage means' of

claim 41 is the first/second *party's* bank's computer."  *Id.*  Defendants further argue that "none of

the additional structures identified by Plaintiff perform the function of storing account

information."  *Id.*

Plaintiff replies that because the disputed term does not recite "means for," any

presumption of means-plus-function claiming is weak.  Dkt. No. 396 at 8.  Plaintiff also notes

that the claim at issue "recites 'storage means' only in the preamble and does not recite that the

'storage means' performs any particular function."  *Id.*  Alternatively, Plaintiff reiterates that

"Defendants' proposed function and structure improperly narrow the scope of claim 41."  *Id.*

(2)  Construction

The Court previously found that this term is not subject to the requirements of § 112, ¶ 6

because "the term 'storage means' was well defined in the art at the time of the invention" and

because "the claim is not drafted in standard § 112, ¶ 6 format." *Merrill Lynch* Order at 16-17.

Although Defendants argue that the term is not well defined because it is not limited to computer

systems, computer storage means are simply one type of well defined storage means. The

*Merrill Lynch* construction thus appropriately notes that the storage "may include a computer

file." The Court adopts the construction reached in *Merrill Lynch*.

The Court construes "first/second storage means" to mean "first/second place for storing

information, which may include a computer file."

**R. "information for identifying the first/second account of the first/second party"**

Plaintiff proposes this term means "information that is used to identify an account

associated with the first/second party." Dkt. No. 390 at 24. Defendants propose this term means

"information that is used to identify a precise record of debit and/or credit transactions particular

to the first/second party." Dkt. No. 395 at 21.

(1) Parties' Positions

Plaintiff argues that Defendants' proposal fails to comport with the claim language. Dkt.

No. 390 at 25. In particular, Plaintiff submits that the antecedent basis for "the first/second

account" is "a first/second account *associated with* a first/second party." *Id.* at 24-25 (quoting

Claim 41 of the '302 Patent).

Defendants respond that "Claim 41 is directed to a specific method for authenticating

information relating to a financial transaction between two parties, *i.e.*, a transaction in which

one party's account is credited and the other's is debited." Dkt. No. 395 at 21. Defendants

further argue that "the specification and prosecution history . . . only support a construction

requiring 'a record of debit and/or credit transactions.'" *Id.* at 22.

41

Plaintiff replies that "[Defendants'] response offers no support for including the language 'particular to.'"  Dkt. No. 396 at 9.

(2)  Construction

The Court previously construed this term to mean "information that is used to identify an account of the first/second party."  *See Merrill Lynch* Order at 13.  Claim 41 recites, in relevant part (emphasis added):

> 41. A method for authenticating the transfer of funds from *a first account associated with a first party to a second account associated with a second party*, the first account information being stored in a first storage means, and the second account information being stored in a second storage means, the method comprising:
>
>> receiving funds transfer information from the first party, including at least *information for identifying the first account of the first party, and information for identifying the second account of the second party*, and a transfer amount;
>>
>> generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;
>>
>> a third party for determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and
>>
>> transferring funds from the first account of the first party to the second account of the second party if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

The antecedent basis for the disputed term is "a first account associated with a first party" and "a second account associated with a second party."  This antecedent basis shows that when the claim refers to the account "of" a party, the account is "associated with" the party.

Also, Defendants' citations to intrinsic evidence about "crediting and debiting" are insufficient to limit the disputed term to records of debit/and or credit, as discussed above regarding the term "transferring funds from the first account of the first party to the second

account of the second party if," which also appears in Claim 41.

The Court therefore adopts Plaintiff's proposal and construes "information for identifying the first/second account of the first/second party" to mean "information that is used to identify an account associated with the first/second party."

**S.  "one or more pieces of payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number"**

Plaintiff proposes this term means "one or more pieces of the following payment information: an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number." Dkt. No. 390 at 25.  Defendants propose this term means "one or more pieces of payment information, the one or more pieces of payment information including each of the following: an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number." Dkt. No. 395 at 22. The parties thus only dispute whether the payment information must include all, or just at least one of, the listed pieces of information.

(1)  Parties' Positions

Plaintiff submits that his proposal was adopted by the Court in *JPMorgan* and agreed upon in *Merrill Lynch*. Dkt. No. 390 at 25. Plaintiff argues that the phrase "one or more" "leaves no question that the claim is satisfied when one 'piece' of payment information is included with the instrument." *Id.*

Defendants respond that if the patentee had intended to use the phrase as an "alternative expression, he could have easily used Markush language," that is, a phrase like "selected from a group consisting of." Dkt. No. 395 at 22 (citing 5/11/2009 Claim Construction Order,

*DataTreasury Corp. v. Wells Fargo & Co., et al.*, C.A. No. 2:06-CV-72, Dkt. No. 1221 at 108-109).

#### (2) Construction

The parties in *Merrill Lynch* agreed on the construction now proposed by Plaintiff. *See Merrill Lynch* Order at 7. In *JPMorgan*, the parties agreed in principle with Plaintiff's proposal but disagreed instead on whether the information had to be included on an instrument. *See JPMorgan* Order at 27-28. The parties' present dispute is thus a new one.

As Defendants note, this Court found in *DataTreasury* that the failure to use Markush language militated against reading a list as a set of alternatives. *See* No. 2:06-CV-72, Dkt. No. 1221 at 108-109. The term at issue in *DataTreasury* was: "Paper transaction data including a payer's bank routing number, a payer bank's routing information, a payer's account number, a payer's check, a payer's bank's draft, a check amount, a payee bank's identification number, a payee bank's routing information and a payee's account number." Here, by contrast, the claim term at issue recites "one or more pieces of payment information." Defendants have not shown why this "one or more" language should not be given a natural reading. Further, Defendants have not shown that Markush language is the only permissible way to recite a list of alternatives.

The Court therefore adopts Plaintiff's proposal and construes "one or more pieces of payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number" to mean "one or more pieces of the following payment information: an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number."

**T.  "check control or serial number"**

Plaintiff proposed this term means "a value that is used to identify an instrument."  Dkt. No. 390 at 26.  Defendants proposed this term means "a unique number for determining the identity of the instrument."  Dkt. No. 395 at 23.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary construction of this term to mean "a number that is used to identify the instrument."  All parties were agreeable to this construction.  The Court therefore construes the term accordingly.

**U.  "descriptive details of the first party"**

Plaintiff proposes this term means "information that describes a feature of the first party." Dkt. No. 390 at 26.  Defendants propose this term means "personal information that identifies the first party."  Dkt. No. 395 at 24.

(1)  Parties' Positions

Plaintiff argues that his proposal is consistent with the plain meaning of the claim language and the specification because "the claimed 'secret key' is an embodiment of the disclosed joint key."  Dkt. No. 390 at 26-27.  Plaintiff further argues that descriptive information can describe a party without *identifying* a party because, for example, a telephone number may be associated with more than one party.  *Id.* at 27.

Defendants respond that the written description specifies that "personal descriptive details" are used to identify a party.  Dkt. No. 395 at 24.  Defendants further argue that the word "feature" in Plaintiff's proposed construction is "unclear" and "could refer to something so broad (*e.g.*, country or marital status of a party) that it would be practically useless in identifying the party, as required by the patents."  *Id.*

45

(2)  Construction

Claim 4 of the '148 Patent depends from Claim 1.  Claims 1 and 4 recite (emphasis added):

> 1. A method of transferring funds from a first party to a second party, the method comprising:
>
> > creating a variable authentication number (VAN) on a computer using first information and a secret key of the first party, the first information including an amount and information for identifying the first party or the second party, the VAN attesting to the authenticity of the first party and the first information;
>
> > creating an instrument by the first party for transferring funds to the second party, the instrument including the first information and the variable authentication number (VAN) and attaching the VAN to the instrument.
>
> . . .
>
> 4. The method of claim 1 wherein the secret key is obtained by the first party using a PIN, or using *descriptive details, of the first party*.

Claim 4 thus recites that the secret key should only be obtained by the first party.  Thus, the

purpose of the "descriptive details" is to aid in identifying the first party.  The only use of the

word "descriptive" in the specification confirms this reading:

> The VAN which is generated from information (INFO) recorded on the credential, or from information which is otherwise stored by the system, can include (coded) *personal descriptive details to further identify the user* (in addition to the user's PIN and TIN) in order to limit the use of the credential to the sole individual to whom it was issued (or sold).

'148 Patent at 12:16-22 (emphasis added).  The Court nonetheless rejects Defendants' proposal

because neither the claims nor the written description disclose that the "descriptive details" must

by themselves conclusively identify the first party.  Instead, the above-quoted passage suggests

that the "descriptive details" can simply aid in identifying the first party.  Finally, the Court omits

Plaintiff's proposed word "feature" because it is unnecessary, is potentially vague, and is not found in the specification in any relevant context.

The Court therefore construes "descriptive details of the first party" to mean "information that describes the first party."

**V.  "instrument for transferring funds" / "payment instrument"**

Plaintiff proposes that "instrument for transferring funds" means "a document (including paper or electronic) that is used to transfer funds to a recipient party." Dkt. No. 390 at 27. Defendants propose this term means "a financial document (including paper or electronic) that includes all the information necessary to transfer funds to a recipient party." Dkt. No. 395 at 24.

Plaintiff proposes that "payment instrument" means "a document (including paper or electronic) that is used to transfer funds to a recipient party in connection with a payment." Dkt. No. 390 at 27. Defendants propose this term means "a financial document (including paper or electronic) that includes all the information necessary to transfer funds to a recipient party in connection with a payment." Dkt. No. 395 at 24.

(1)  Parties' Positions

Plaintiff submits that his proposals were adopted by the Court in *JPMorgan* and were agreed upon by the parties in *Merrill Lynch*. Dkt. No. 390 at 27. Plaintiff argues that Defendants' use of the word "financial" in their proposed constructions is "unclear and superfluous." *Id.* at 27-28. Plaintiff also argues that Defendants have no support for their proposal that the instrument include "*all the information necessary* to transfer funds to a recipient party." *Id.* at 28.

Defendants respond that the specification discloses that "an 'instrument' accomplishes a

funds transfer by creating a legally enforceable agreement between parties regarding a right to a payment of money (rather than simply providing mere instructions to pay)."  Dkt. No. 395 at 24-25.  Defendants further argue that an "instrument" must contain "*all* information necessary to transfer funds in a given context," as shown by all embodiments in the specification.  *Id.* at 25.  As to including the word "financial," Defendants submit that the examples of instruments in the specification are checks, stock certificates, and bonds, all of which are financial instruments.  *Id.*

Plaintiff replies that even a check may not include "all the information necessary to transfer funds" because "[a] check recipient typically identifies an account into which funds are to be deposited[] and must endorse the check."  Dkt. No. 396 at 9.

(2)  Construction

In *Merrill Lynch*, the parties agreed to the constructions that Plaintiff now proposes.  The *JPMorgan* parties disputed whether the "instrument" or "payment instrument" had to be commercial paper or could simply be instructions to pay.  *See JPMorgan* Order at 20.  The Court found that "[t]he specification's inclusion of a cashless system indicates electronic instructions are within the scope of the invention."  *Id.*

The parties here dispute whether an "instrument" must include "all the information necessary to transfer funds to a recipient party in connection with a payment."  The terms at issue appear in Claims 28, 34, and 35 of the '148 Patent.  Claim 28 recites "the payment instrument being used to pay," which supports construing "payment instrument" to require all necessary information for a funds transfer.  Such a reading would seem consistent with the written description, which uses the term "instrument" only once: "There are many times in our daily lives when the need arises for highly secure transactions.  For example, instruments of

48

commerce, such as checks, stock certificates, and bonds are subject to theft and forgery." '148

Patent at 1:25-26.

Claim 35, however, recites in relevant part:

> an originator party creating an instrument for transferring funds to a recipient party, the instrument information comprising (i) a variable authentication number (VAN), and (ii) *one or more pieces of payment information* including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number;

The Court has construed the "one or more pieces of payment information" term, above, to require

only one or more, not all.  Thus, the recited "instrument for transferring funds" need not

necessarily identify both the amount and the recipient, which Defendants submit is required for

actually transferring funds.  *See* Dkt. No. 395 at 25.  Such a reading is further supported by the

Plaintiff's argument in his briefing that even a complete financial instrument may still require

endorsement and identification of a recipient's account before any funds can be transferred.

Finally, the word "financial," proposed by Defendants, is unnecessary and potentially

confusing because the disputed terms themselves state that the instrument is for payment or for

transferring funds.

The Court therefore adopts Plaintiff's proposed constructions.  The Court construes

"instrument for transferring funds" to mean "a document (including paper or electronic) that is

used to transfer funds to a recipient party."  The Court construes "payment instrument" to mean

"a document (including paper or electronic) that is used to transfer funds to a recipient party in

connection with a payment."

## W.  "error detection code"

Defendants propose this term means "an algorithm for coding information that, when

applied to original information, creates coded information wherein changes to the coded information can be detected without complete recovery of the original information." Dkt. No. 395 at 26. Plaintiff proposes this term means "*the result of applying* an algorithm for coding information that, when applied to original information, creates coded information wherein changes to the coded information can be detected without complete recovery of the original information." Dkt. No. 390 at 28 (emphasis added).

(1)  Parties' Positions

Plaintiff proposes the construction reached by the Court in *Merrill Lynch*, with the addition that the term refers to "the result of applying" the algorithm rather than the algorithm itself. Dkt. No. 390 at 28. This is also a subject of Plaintiff's pending objection to the claim construction in *Merrill Lynch*. C.A. No. 2:08-CV-462, Dkt. No. 424 at 9-10.

Defendants respond that the Court correctly found in *Merrill Lynch* that this term refers to an algorithm. Dkt. No. 395 at 26. Defendants cite disclosure of "error detection coding" in the specification and argue that "[b]ecause 'error detection coding' is coding information into the VAN, it is only logical that the 'error detection code' is the algorithm that performs the coding function." *Id.*

Plaintiff replies that applying Defendants' proposal to Claim 35 yields nonsense because the claim would recite creating an algorithm and coding the algorithm to create the VAN. Dkt. No. 396 at 10.

At the December 16, 2010 hearing, the parties reiterated these arguments.

(2)  Construction

 The claims themselves refer to "deriving," "coding," "generating," or "comparing" an

50

error detection code, such as in Claims 33 and 63 of the '302 Patent. These are actions that

would be more naturally performed on a value than on an algorithm. Further, although the term

"error detection code" is not used outside of the claims, the written description refers to "error

detection coding" as a tool for detecting changes:

> It is contemplated that in creating the VAN, all information would not necessarily
> be coded in the same manner. For example, the amount of the check might be
> considered important enough so as to be recoverable completely, and it would be
> coded into the VAN in a manner that would permit complete recovery. Other
> information, such as the date and check control number might be considered less
> important and would be *coded into* the VAN in such a manner as to permit
> detection of changes (e.g., *error detection coding*), but without complete recovery
> of the original information.

'302 Patent at 5:34-44 (emphasis added). This passage is consistent with reading "error detection

code" to refer to a "coded in[]" value rather than an algorithm. *See id.*

The Court therefore adopts Plaintiff's proposal and construes "error detection code" to

mean "the result of applying an algorithm for coding information that, when applied to original

information, creates coded information wherein changes to the coded information can be detected

without complete recovery of the original information."

## X. "including the VAN with the instrument"

Plaintiff proposed that "[n]o construction [is] necessary beyond the meaning of the terms

VAN and instrument." Dkt. No. 390 at 28. Defendants proposed this term means "the VAN

accompanying the instrument," or, as a "[c]ompromise construction," Defendants proposed this

term means "taking the VAN in as a part, an element, or a member of the instrument." Dkt. No.

395 at 27.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary

construction of this term to mean "taking the VAN in as a part, an element, or a member of the instrument." All parties were agreeable to this construction. The Court therefore construes this term accordingly.

**Y.  "attaching the VAN to the instrument"**

Plaintiff proposed this term means "joining or connecting the VAN to the instrument." Dkt. No. 390 at 29. Defendants proposed this term means "the VAN joined to the instrument," or, as a "[c]ompromise construction," Defendants proposed this term means "joining the VAN to the instrument." Dkt. No. 395 at 28.

At the December 16, 2010 hearing, the Court provided the parties with a preliminary construction of this term to mean "joining the VAN to the instrument." All parties were agreeable to this construction. The Court therefore construes this term accordingly.

**Z.  "appending the VAN to the payment instrument"**

Plaintiff proposes this term means "joining or connecting the VAN to the payment instrument." Dkt. No. 390 at 29. Defendants propose this term means "the VAN joined to the end of the instrument," or, as a "[c]ompromise construction," Defendants propose this term means "joining the VAN to the end of the instrument." Dkt. No. 395 at 28.

(1)  Parties' Positions

Plaintiff argues that "the common meaning of 'appending' is not limited to joining 'to the end,'" as Defendants propose. Dkt. No. 390 at 29. Plaintiff also argues that a VAN can be imprinted on a physical check or included with an electronic instrument and that "[i]t is unclear what constitutes 'the end of' a check or 'the end of' an electrical signal." *Id.* at 29-30.

Defendants respond that the ordinary meaning of "appending" is to join at the end of.

Dkt. No. 395 at 28.  Defendants also note that Plaintiff acknowledges that "including" and

"appending" are different actions that require different constructions.  *Id.*  Defendants further

submit that the specification does not use the word "append."  *Id.* at 29.  Finally, Defendants

argue that the word "connecting" in Plaintiff's proposal is unnecessary and unsupported.  *Id.*

   Plaintiff replies that many common definitions of "append" do not include "to the end"

and that "Defendants have yet to explain how a VAN is attached 'to the end' of a check."  Dkt.

No. 396 at 10.

   At the December 16, 2010 hearing, the Court provided the parties with a preliminary

construction of this term to mean "joining the VAN to the payment instrument."  Plaintiff was

agreeable to this construction.  Defendants maintained their proposal that the construction must

include "to the end of."

   (2)  Construction

   "Appended" or "appending" appears in Claims 3, 18, 28, and 30 of the '148 Patent.

These words are not used in the written description.  Instead, the written description merely

discloses that "the VAN and at least a portion of the information relevant to the transaction are

included with the electrical signals associated with the electronic transaction."  '148 Patent at

5:30-33.  First, including "to the end" in the construction would be confusing and overly limiting.

For example, as Plaintiff argues, the patent does not illuminate the meaning of joining a VAN "to

the end" of a paper check or other instrument.  Second, the claims appear to treat "appending"

and "joining" as synonymous, and nothing in the specification suggests otherwise.  *See Power*

*Mosfet*, 378 F.3d at 1409-10 ("While we have often explained that we presume that there is a

difference in meaning and scope when different words or phrases are used in separate claims, the

rule is not inflexible.") (citation and internal quotation marks omitted).  Third, "connect" or

"connecting" do not appear at all in the specification, and the parties have agreed to omitting

"connecting" from the construction of "attaching the VAN to the instrument," as noted above.

The Court therefore omits "connecting" from the present construction.

The Court construes "appending the VAN to the payment instrument" to mean "joining

the VAN to the payment instrument."

## AA.  "accounts receivable" / "accounts payable"

Plaintiff proposes that "accounts receivable" means "a record that indicates a monetary

value owed."  Dkt. No. 390 at 30.  Defendants propose this term means "balances of multiple

accounts of funds due from one or more debtors."  Dkt. No. 395 at 29.

Plaintiff proposes that "accounts payable" means "a record that indicates a monetary

value due to be paid."  Dkt. No. 390 at 30.  Defendants propose this term means "balances of

multiple accounts of funds due to one or more creditors."  Dkt. No. 395 at 29.

(1)  Parties' Positions

The parties dispute whether each of these disputed terms can refer to a single record or

must refer to multiple accounts.  Plaintiff argues that there might only be one record or even zero

records if, for example, a company has only one customer or no customers, respectively.  Dkt.

No. 390 at 30.

Defendants respond that because the disputed terms use the word "accounts," which is

plural, the terms must refer to more than one account.  Dkt. No. 395 at 29.  Defendants also

submit that although the written description does not use the terms "accounts receivable" or

"accounts payable," "it uses the singular 'account' when referring to a single account, 7:16-45,

and the plural 'accounts' for multiple accounts[,] 24:5-29." *Id.* at 30.

Plaintiff replies that the disputed terms "have accepted, ordinary meanings apart from the phrases' constituent parts." Dkt. No. 396 at 10. In particular, Plaintiff submits, "accounts receivable" means "money owed to a company," and "accounts payable" means "money owed by a company." *Id.*

At the December 16, 2010 hearing, the parties reiterated these arguments.

(2) Construction

The terms "accounts receivable" and "accounts payable" appear only in Claim 44 of the '302 Patent and do not appear in the written description. Claim 44 recites (emphasis added):

> 44. The method of claim 43 wherein prior to payment being made to the second party, the first party is presented with the second party's invoice, and after the payment is made to [the] second party, the *accounts receivable* associated with the second party, and the *accounts payable* associated with the first party are updated.

Claim 44 recites that the "accounts receivable" and "accounts payable" are "updated," which is consistent with interpreting these terms as referring to some sort of accounting ledger or record. The Court therefore rejects Defendants' proposal that the "accounts receivable" and "accounts payable" must each include balances of multiple accounts. The Court instead adopts Plaintiff's proposals.

The Court construes "accounts receivable" to mean "a record that indicates a monetary value owed." The Court construes "accounts payable" to mean "a record that indicates a monetary value due to be paid."

## BB.  Preamble of Claim 51

Defendants propose that the preamble of Claim 51 is limiting and requires "a credential

being previously issued to at least one of the parties by a trusted party, the information stored in

the credential being non-secret." Dkt. No. 395 at 30. Plaintiff proposes that the preamble is not

limiting.

Defendants note that "'[c]redential information' appears in the body of the claim and

refers back to the credential and credential information described in the preamble." Dkt. No. 395

at 30. Defendants argue that "the preamble is an antecedent basis for credential" and that "[t]he

preamble also includes the essence of the invention expressed in this claim." *Id.*

Claim 51 of the '302 Patent recites (emphasis added):

51. A method for authenticating the transfer of funds from an account associated with a first party to an account associated with a second party, *a credential being previously issued to at least one of the parties by a trusted party, the information stored in the credential being non-secret*, the method comprising:

receiving funds transfer information, including at least information for identifying the account of the first party, and information for identifying the account of the second party, and a transfer amount;

generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;

determining whether the at least a portion of the received funds transfer information is authentic by using the VAN and the *credential information*; and

transferring funds from the account of the first party to the account of the second party if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

The above-quoted "determining" step recites use of "the credential information," which has its

antecedent basis in the preamble's recitation of "a credential" and "the information stored in the

credential." On balance, in light of this antecedent basis relationship, the preamble is a

limitation. *See, e.g., Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("[W]hen

the limitations in the body of the claim 'rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.'").

The Court therefore construes Claim 51 to require "a credential being previously issued to at least one of the parties by a trusted party, the information stored in the credential being non-secret," as recited in the preamble.

## IV.  CONCLUSION

The Court hereby **ORDERS** the disputed claim terms construed as set forth above.

**IT IS SO ORDERED.**

**SIGNED this 27th day of December, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE